**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL HEFFERNAN and LINDSEY IBERL, | ) | |
| Plaintiffs, | ) | No. 10 C 7564 |
| v. | ) | Judge Lefkow |
| CITY OF CHICAGO, a Municipal Corporation, OFFICER SERGIO CORONA, OFFICER GARY FREAR, OFFICER P.R. HEYDEN II, OFFICER G.H. SOBIERAJ, OFFICER J.J. SCHACHELMAYER, OFFICER R.J. RENTNER, OFFICER T.J. DUGGAN, OFFICER JULIE BUTZEN, | ) | Magistrate Judge Cole |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs have filed suit over a search of their residence pursuant to a warrant in September of 2010. The warrant was procured by Officer Corona based on information provided by a confidential informant, who claimed that cannabis was being sold from the residence and that large quantities of cannabis would be found there. According to Officer Corona, the confidential informant had a track record of supplying accurate information resulting in numerous successful executions of search warrants. Officer Corona has testified that the informant claimed to have purchased cannabis from plaintiff at his residence only a few days earlier. The search yielded no cannabis, but it did turn up a pill, which the defendant officer identified as Ecstasy because it had a "logo" or a "design" on it and had no scoring as many prescription medications do. Plaintiff, Daniel Heffernan, was arrested.

At the preliminary hearing following plaintiff's arrest, the lab report revealed that the pill was, in fact, the prescription medication Alprazolam, which is an anti-anxiety medication. The plaintiff had been under a doctor's care and had been prescribed anti-anxiety medications. Contrary to Officer Corona's description of the pill, it *was* scored in the middle, and did *not* have a logo. It had two "O's" on one side and an "I" and an "R" on the other. The criminal court judge made a finding of no probable cause and the charges were dismissed.

The General Orders of the Chicago Police Department require that specific records be maintained on Registered Cooperating Individuals ("RCI"s). The General Orders state that one of the purposes for maintaining records on RCIs is to "document the identity and reliability of the RCI" and "establish the credibility of the RCI in support of search warrant activities." (Pl. Ex. B). Notwithstanding the general order and Corona's concession at his deposition that the informant in this case was an "RCI," (Dep. p. 194), Corona said that he kept no records pertaining to the information the informant had provided him in other cases. When this fabrication became unsustainable, and it became clear that there was a record, Corona then testified that his practice is **not** to put information in an RCI's file if a search did not result in the discovery of contraband. He acknowledged that he did not add to this RCI's file the fact that the search of the plaintiff's residence came up empty. In other words, defendant keeps negative information out of the RCI files, thereby fraudulently creating an appearance of reliability and honesty and defeating the very purpose for which the RCI files are required.

The plaintiff has moved for an order compelling the defendants to produce the RCI file and reveal the identity of the informant in order to compare the information in the file with the defendant's statements. The information is clearly relevant to and thus discoverable for purposes of

impeachment, if nothing else. Despite the defendant's admitted practice of falsifying the records of informants' reliability, it might well reveal other important information about the informant that would go to the informant's reliability. The plaintiff is not bound to accept as true Corona's claims on anything, especially when what has been revealed so far calls into the most serious question his basic integrity – an issue which pervades the case.

It is true that police are not limited to relying only on informants with proven track records of providing truthful information. *United States v. Mitten*, 592 F.3d 767, 773 -74 (7th Cir. 2010). But it is deceptive to present to a judge an informant with a bad track record in the guise of one with a clean slate. It is no answer to say, as the defendants have, that the warrant application did not explicitly state that "J. Doe" had in the past given credible and reliable information. The argument misses the mark. Corona had a duty of candor and honesty, which was breached rather badly by his silence on the matter of Doe's past reliability. Under the circumstances of this case, that silence was misleading and was effectively a misstatement, for it falsely conveyed to the judge that Doe had no prior involvement with the police.

Yet, Corona knew that Doe had proven unreliable in the past, and he sought to conceal that critical fact by not including instances of unreliability in the RCI register – as he was required to do – thereby enabling him to conceal Doe's spotty track record from the judge. The scheme was consummated by labeling the affiant as J. Doe, which would signal to the judge that he was a first time informant with no track record, for surely, if Doe were an informant of proven reliability, Corona would have said so. And just as surely, would the judge assume that if Doe's past performance was blemished, Corona would have disclosed that fact.

In short, it is at least likely, if it is indeed not an inescapable conclusion, that Officer Corona's application for the warrant was not a blunder, but rather was a purposeful effort to hoodwink the judge by concealing that Doe had been unreliable in his prior dealings with the police – a critical component in the judge's assessment of probable cause. *United States v. Searcy*, 2011 WL 6880631,* 4 (7th Cir. 2011); *United States v. Mitten*, 592 F.3d 767, 773 -74 (7th Cir. 2010).[1] The plan was ingenious. But just as the Constitution forbids sophisticated as well as simpleminded modes of discrimination, *Reynolds v. Sims*, 377 U.S. 533, 563 (1964), so too does it prohibit attempts to obtain search warrants through misleading silence.

As for the identity of the informant, as the plaintiff points out, the defendant's credibility after his testimony about how he handles informant records is open to the most serious question. *See* Rule 608(b), Federal Rules of Evidence. But that does not mean the plaintiff should be precluded from gathering further evidence that relates toe credibility generally and to the defendant's conduct in this case specifically. The plaintiff should be able to depose the informant, to find out what he actually told the defendant and just how seriously the defendant may have misrepresented the situation to the court in order to obtain the warrant.

The defendants object to any discovery. They invoke the confidential informant privilege. But like the attorney/client privilege that evaporates when abused, *Clark v. United States*, 289 U.S. 1, 16 (1933)(Cardozo, J.), the limited governmental privilege to withhold the identity of a confidential informant vanishes if it can be shown that the disclosure of the informant's identity "is relevant and helpful . . . or is essential to a fair determination of a cause." *United States v. Wilburn*,

---

[1] An informant with a good track record will more easily impress a judge as truthful. But it works the other way, too, as Corona surely knew.

581 F.3d 618, 622-23 (7th Cir. 2009)(citations omitted). The preservation of anonymity encourages citizens to communicate their knowledge regarding the commission of crimes to law enforcement officials. *United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir. 2001). To determine whether the government is required to disclose the identity of the informant, a court has to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Wilburn*, 581 F.3d at 623. It examines "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* (citations omitted).

Given the fact that Officer Corona hid the informant's past reliability from the judge – thereby creating the misimpression that he was not previously unreliable – the privilege should vanish, and the plaintiff's right to prepare his case outweighs the concerns that inform the privilege. There were no charges here and the search based on the informant's tale revealed nothing. Then, to compound things, the officer attempted to rehabilitate his search for cannabis by falsely identifying a prescription pill as Ecstasy. To conceal the identity of "J.Doe" is clearly not in the public interest and would disserve that interest by permitting Corona to continue the dubious gambit he employed in this case. The only thing preservation of the privilege would encourage here would seem to be drug users parlaying bogus information in exchange for leniency from law enforcement. That is not something to be encouraged. *See United States v. Bell*, 585 F.3d 1045, 1051 (7th Cir. 2009)(lack of utility of unreliable informants).

The plaintiff's Motion to Compel [41] is granted. Of course, the deposition of the informant should be taken under circumstances that will provide a sufficient measure of confidentiality so that Doe's real identity will, at least for now, be available only to counsel under an attorneys' eyes only
[page 5 number]

protective order. The same will be true of any disclosures of documents regarding Doe's identity and prior involvements as an informant for Corona or any other Chicago police officer. Mr. Heffernan will not be allowed to attend the deposition or to read the transcript without further order of court. Nor will he be able to review documents provided that reveal the informant's identity or his prior involvement with the Chicago Police Department or any of its officers, without further order of court

.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 1/24/12