**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DANIEL HEFFERNAN and LINDSEY IBERL, | ) ) ) | |
| Plaintiffs, | ) ) | No. 10 C 7564 |
| v. | ) ) ) | Judge Joan Lefkow |
| CITY OF CHICAGO, a Municipal Corporation,` OFFICER SERGIO CORONA, OFFICER GARY FREAR, OFFICER P.R. HEYDEN II, OFFICER G.H. SOBIERAJ, OFFICER J.J. SCHACHELMAYER, OFFICER R.J. RENTNER, OFFICER T.J. DUGGAN, OFFICER JULIE BUTZEN, | ) ) ) ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This lawsuit is about the search of the plaintiff's home pursuant to a warrant. One of the defendants, Officer Corona, procured the warrant based on a tip from an informant that marijuana was being sold out of the home and that a large quantity of it would be found there. The search yielded no marijuana, but Officer Corona did come up with a single pill that he identified as ecstasy. It wasn't ecstasy. It didn't even look like ecstasy; Officer Corona had, in fact, given a faulty description of the pill at the preliminary hearing following Mr. Heffernan's arrest. The pill was actually the prescription drug Alprazolam, an anti-anxiety medication. *Heffernan v. City of Chicago*, 2012 WL 642536, *1 (N.D.Ill. 2012).

There were some more troubling aspects to this bit of police work. Officer Corona testified that, contrary to the General Orders of the Chicago Police Department, he kept no file of the informant's track record in providing information. When this story began to unravel, he said he only

kept track of good tips from informants. In other words, if an informant gave 2 good tips out of 10 and was batting only .200, he was 2 for 2 and batting 1.000 in Officer Corona's book. But it didn't stop there. Even though the informant had a past performance sheet, Officer Corona presented the informant as a "J.Doe" when he sought the warrant. So, as far as the judge knew, this was the informant's first time out of the gate.

Not surprisingly, when the plaintiff moved for an order compelling the defendants to produce the file and informant's identity, the defendants' assertion of the confidential informant's privilege didn't fly, and the plaintiff's motion was granted. (Dkt. #41 ). The defendants had the opportunity to lodge objections to that ruling with Judge Lefkow under Fed.R.Civ.P. 72. They did not do so, and as a result, they waived their right to challenge the ruling before the district court or before the Court of Appeals at the end of the case. *Schur v. L.A. Weight Loss Centers, Inc*., 577 F.3d 752, 760 (7th Cir. 2009). *See generally*, Jeffrey Cole, *Reversing the Magistrate Judge*, 36 LITIGATION 9 (Winter 2010)(collecting cases).[1] The waiver rule in this context seeks to prevent sandbagging of the district court and one's opponent. *Thomas v. Arn,* 474 U.S. 140, 147 (1985). *See Smith v. School Bd. of Orange County*, 487 F.3d 1361, 1365 (11th Cir. 2007);

Rather than seeking review by Judge Lefkow, the defendants agreed to a protective order on February 27, 2012. Under the terms of that order, the file would be produced on an attorneys' eyes

---

[1] *See also Zinna v. Cook,* 428 Fed.Appx. 838, 841 (10th Cir. 2011); *Reddick v. White*, 456 Fed.Appx. 191, 193-194 (4th Cir. 2011); *Lee v. Plantation of Louisiana LLC*, 454 Fed.Appx. 358, 359 (5th Cir. 2011); *Egan v. Freedom Bank*, 659 F.3d 639, 644 (7th Cir. 2011); *DirecTV, Inc. v. Barczewski,* 604 F.3d 1004, 1011 (7th Cir.2010); *Spencer v. Beard*, 351 Fed.Appx. 589, 590-91 (3rd Cir. 2009); *Banco Del Atlantico, S.A. v. Woods Industries Inc*., 519 F.3d 350, 354 (7th Cir. 2008); *Wells Fargo Bank, N.A. v. Carnago*, 2012 WL 1205666, 3 (E.D.Mich. 2012)(collecting cases); *Muegge v. Heritage Oaks Golf and Country Club, Inc.*, 209 Fed.Appx. 936, 939 (11th Cir. 2006); *Garland v. Malinich,* 181 Fed.Appx. 276, 278 (3rd Cir. 2006).

only basis, and the informant would be deposed, *in camera*, with only the attorneys in attendance and with the transcript of the proceedings to be maintained under seal. On April 26th, the defendants balked at complying with the protective order and completing their now binding and agreed-to discovery obligations. Instead, in an attempt to avoid the consequences of having failed to file timely and specific objections to the ruling with Judge Lefkow as required by Rule 72(a), the defendants requested an *ex parte* discussion with the court so they could tell the court about the "serious and potentially dangerous nature of the disclosure of the identity and the deposition of the confidential informant in this matter." (Dkt. # 74). The motion was slightly more than a page in length, cited not a single case, and offered nothing more than unsupported conclusions as a basis for the defendants not having to comply with an order of the court to which they had readily agreed three months earlier, and whose validity they had chosen not to contest with Judge Lefkow.

The defendants had simply ignored a protective order that they agreed to and the fact that it was their burden to demonstrate "good cause" for vacating or modifying it. *See Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D.Ill. 2006)(collecting cases); *see also Chicago Mercantile Exchange, Inc. v. Technology Research Group*, LLC, 276 F.R.D. 237, 240 (N.D.Ill. 2011); *Trading Technologies Intern., Inc. v. GL Consultants, Inc*., 2011 WL 148252, 2 (N.D.Ill. 2011). That burden is especially high when seeking to modify or vacate agreed protective orders. *SmartSignal Corp. v. Expert Microsystems, Inc*., 2006 WL 1343647, 2 (N.D.Ill. 2006).

Under applicable precedent, given the skeletal and unsupported nature of the defendants' filing, the motion could have been denied outright. *Puffer v. Allstate Insurance. Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *Ernst v. City of Chicago*, 2012 WL 27594 (N.D.Ill. 2012). But given the seriousness of the claims, the defendants were allowed to file an appropriate brief. (Dkt. #81). On

June 8, the defendants filed their memorandum in support of their request to be excused from their agreement of February 27, 2012. According to the affidavit of Thomas Waldera, a commanding officer of two gang enforcement units, the informant provided two successful drug tips – on August 13, 2010, and September 2, 2010 – before the faulty information in this case. These tips yielded 4500 grams of marijuana and $13,000, and 1005 grams of cocaine and a handgun. (Waldera Aff., ¶¶ 9-11).

Officer Waldera was not involved in those searches; he either learned of the tips and the results from a recent review of the informant's file or a similarly recent conversation with one of the defendants; he is not specific. (Waldera Aff., ¶ 7). As is now known, however, the file was "padded," and Officer Corona – and perhaps others – never recorded bad tips. Hence, given the unreliable basis for his assertions, they change nothing regarding what occurred prior to the issuance of a warrant in this case.[2]

Officer Waldera goes on to state that the informant went 5 for 6 on tips after the search in this case but before he was assigned to the unit. (Waldera Aff., ¶¶ 12-13). He gets these numbers either from the unreliable and underinclusive file or from one of the defendants; again, he is unspecific. (Waldera Aff., ¶ 13). Either source is highly suspect. We already know the file has been corrupted by intentional under reporting, and the defendants have every motive to say what will best assist their cause. *Schmude v. Tricam Industries, Inc.*, 556 F.3d 624, 628 (7th Cir.2009)("Moreover, every judge is aware that many people who do not have a criminal record will

---

[2] Affidavits and declarations must demonstrate the testimonial competence of the declarant. *See* Rule 602, Federal Rules of Evidence if they are to be of any value. Officer Waldera's testimony proves nothing more than that someone may have told him something, the truthfulness of which cannot be ascertained on this record. Or he reviewed some file, whose accuracy is equally uncertain. Indeed, in the context of this case, if he reviewed the informant's file we know it to be exceedingly inaccurate. In short, Officer Waldera's declaration is of little or no assistance.

lie in a trial when it is to their advantage.").

The informant in this case became a registered, confidential informant in October 2010. Officer Waldera took over the unit in August 2011. (Waldera Aff., ¶¶ 14-15). Since that time, Officer Waldera says that the informant has been very successful, with many tips yielding positive results. (Waldera Aff., ¶¶ 15-16). His information, we are told, has led to the convictions of 15 individuals. (Waldera Aff., ¶ 21). Officer Waldera believes that the disclosure of any information regarding the informant will have a serious negative impact on numerous ongoing investigations and will endanger the informant's life and the lives of his family. (Waldera Aff., ¶¶ 22-23). The elephant in the room is whether the record keeping is accurate. Given what Officer Corona has already revealed in his testimony, to the extent Officer Waldera is relying on the informant's file, this does not prove anything about the degree of the informant's unreliability. At best, it proves only that he has been reliable on some occasions, but does not begin to show on how many occasions he has been unreliable and thus how deep Officer Corona's admitted deception may be.

Even ignoring what this case has revealed about the unreliability of records kept on this informant, Officer Waldera's affidavit raises more questions than it answers. According to Officer Waldera, the informant became a registered informant and had a stellar record of enabling successful searches and convictions well before the defendants agreed to the protective order in this case. That the defendants' current claim was not made until now makes the claim dubious. To paraphrase Judge Posner's apt observation in *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008): "If [there was a real danger] one would [have] expect[ed] an allegation to that effect [two months ago]. There is none. The [defendants'] silence is deafening."

The defendants' current presentation not only ignores the inferences that may be drawn from this unexplained and delayed offer of production, but is antithetical to the very notion of the "good cause" that must be shown for modifying or vacating an agreed protective order. That requires that there be a showing of changed circumstances. *Kyles v. J.K. Guardian Sec. Servs.,* 2006 WL 2349238, 4 (N.D.Ill. 2006); *Trading Technologies*, 2011 WL 148252 at *2. The defendants have made no attempt to demonstrate changed circumstances, nor could they, for there is nothing that could not have been argued months ago. Moreover, neither of the cases upon which the defendants rely for their requested *ex parte, in camera* hearing involved an extant protective order to which the defendant had agreed.

Neither the defendants' brief nor Officer Waldera's affidavit explains how the asserted dangers to ongoing investigations and to the informant and his family might arise in view of the stringent procedures the court imposed and defendants agreed to not even two months before they changed their minds and filed this motion. Aside from the defendants, themselves, the only person other than the defendants' lawyers who will have access to the information at issue will be the plaintiff's attorney. Nowhere in the defendants' brief or Officer Waldera's affidavit is the reliability and integrity of plaintiff's counsel called into question or shown to be anything less than above reproach. He has practiced for 35 years, and a substantial part of his practice has involved representing or suing police officers. He has never been accused of improperly revealing confidential information or any other type of misconduct. (Crooks Aff., ¶¶ 5-6). He manifestly does not pose any dangers to the integrity of the due administration of justice or the well being of the informant or alleged ongoing police investigations. And he does not pose the dangers to the due

administration of justice that result from unchecked police perjury and deception.[3]

In short, the attorneys' eyes only protective order imposed in this case is adequate to protect the competing interests involved, as numerous cases have held. *See e.g., United States v. Aguilar,* 2010 WL 2977708, 6 (D.N.M. 2010)("Ms. Johnson is ordered that she will not disclose the identity of the CI to anyone-except the defense investigator she retains in this case—unless and until she seeks further leave of the Court. Any information that the United States provides to Ms. Johnson regarding the CI may be discussed only with the investigator and the Assistant United States Attorneys who disclosed it."); *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 2009 WL 1789336, 5 (S.D.N.Y. 2009)("The 'attorneys' eyes only' designation will apply to any information, including that concerning witnesses, provided by the Plaintiffs during discovery."); *United States. v. Vaughn,* 2008 WL 4615030, 3 (E.D.Cal.2008)(approving in sex trafficking case an "attorneys' eyes" only protective order prohibiting the attorney from sharing disclosed information with defendant); *MacNamara v. City of New York,* 249 F.R.D. 70, 94 (S.D.N.Y.2008)("in other words, defendants have failed to articulate some non-conclusory basis in support of their assertion that the limited disclosure of such information would likely pose a risk to, for example, the safety of law enforcement personnel and/or the integrity of ongoing criminal investigations, particularly where this information may be designated, pursuant to the Protective

---

[3] Studies of the problem of police perjury and deception in search and seizure cases have yielded disturbing results. *See e.g.*, Myron W. Orfield, Jr., *Deterrence, Perjury, and the Heater Factor: An Exclusionary Rule in the Chicago Criminal Courts,* 63 U.Colo. L.Rev. 75 (1992); Stephen W. Gard, *Bearing False Witness: Perjured Affidavits in the Fourth Amendment*, 41 Suffolk U.L.Rev. 445 (2008). *See also United States v. Ienco,* 1997 WL 392188, 7 (N.D.Ill.1997)(Coar, J.)("In short, [Chicago Police Officers] Angarone and McGann lied.").

Orders, as "confidential" intelligence information subject to an "attorneys' eyes only" restriction.").

Although not discussed by the defendants, the Second Circuit in *In re The City of New York,* 607 F.3d 923, 936 (2nd Cir. 2010) concluded that an attorneys' eyes only protective order was not an appropriate mechanism to prevent the disclosure of some 1800 pages of highly confidential information regarding large numbers of sensitive investigations by the New York Police Department. The Court of Appeals did not suggest that such orders were not appropriate in criminal cases, merely that given previous leaks of restricted information in the case and the fact that there were more than 50 lawyers on the plaintiff's side covered by the order, it could not be concluded that the protective order was a sufficient safeguard.

The court also pointed out that when there was very substantial evidence of a leak to the newspapers, the magistrate judge overseeing discovery refused to take steps to ascertain whether any of the plaintiff's counsel may have been the source. Instead, he insisted that the City first established its own blamelessness by providing declarations from everyone on the defendants' side who had access to intelligence documents. 607 F.3d at 936-37.

The court's ultimate conclusion that an attorneys' eyes only protective order was inappropriate in the case before it was not a blanket rejection of such an order. Quite the contrary. The opinion even cited its own prior decisions approving such orders and made clear that the holding was based on the unique "circumstances presented." 607 F.3d at 949. In fact, the court held that where the law enforcement privilege must give way to a party's need for discovery, the district court, in order to minimize the effects of disclosure, may order that the documents be "revealed only in a specified way." Fed.R.Civ.P. 26(c)(1)(G). "Although the court is free to tailor the protective order to the circumstances presented, the court may wish to consider making the documents

8

available only on an 'attorneys' eyes only' basis." 607 F3d. at 949.

On the facts presented by the record in this case, the defendants have not demonstrated that there is a sufficient basis on which to conclude either that the claimed, unspecified threat to the informant's well-being either currently exist or, even assuming it does, that the exacting protections imposed by the protective order to which the City initially agreed are insufficient to secure the interests being advanced by the defendants. The defendants were aware of the circumstances at the time they agreed to the attorneys' eyes only protective order. Those circumstances have not been shown to be any different now than they were a few months ago when the City acquiesced in the protective order and chose not to file objections before Judge Lefkow.

To allow the defendants to successfully prevail at this point would be to allow them to avoid the consequences of their own strategic decision not to appeal to Judge Lefkow – by which they are bound, *Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 490-492 (7th Cir.2002) – with the inevitable and obvious consequences to judicial efficiency and to the rule that seeks to prevent sandbagging of the court, and one's opponent by taking a position, and when that doesn't work, simply taking another position. *See Sheehan v. City of Markham*, _F.Supp.2d_, 2012 WL 319894875, *2 (N.D.Ill. 2012)(collecting cases). "Motion practice is not a series of trial balloons where you [submit] what you think is sufficient, [you] see how it flies, and if it does not, you go back and try again. If that is the way the system worked we would have motion practice going on forever," *Hantzel 'N Gretel Brand, Inc. v. Savitsky,* 1997 WL 698179 (S.D.N.Y.1997), to the consequent disadvantage of other litigants "patiently waiting in the queue for the limited time of federal judges." *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996).

9

Nonetheless, the following accommodation can be made without interfering with the plaintiff's legitimate and obvious interest in the particular discovery implicated by the present motion. The deposition of the informant, which will be conducted under the attorneys' eyes only protective order and *in camera* may not, without further order of court, explore the informant's involvement in any investigation begun after the date the warrant in this case was issued. Of course, if the matter is brought into controversy by the defendants' questioning, the plaintiff will be free to conduct appropriate examination on that testimony. The transcript of the entire deposition will be sealed as provided in the protective order. And, finally, the court will be available by phone to deal with whatever issues might arise during the deposition.

## CONCLUSION

The defendants have waived their right to seek review of the order denying their original motion and privilege contentions and cannot now relitigate that issue. They have not sustained their burden of showing the "good cause" required before an agreed protective order can be modified or vacated. The defendants' motion for an *ex parte in camera* proceeding [#74] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 8/17/12